Regents of the University,
of Minnesota,

       Plaintiff,

v.                                               **ORDER**

United States of America, and
E.I. du Pont de Nemours and Co.,

       Defendants.

    Rick E. Kubler, Esq., Richard C. Landon, Esq. and Gray Plant Mooty, 80 South 8th Street, Suite 500, Minneapolis, MN 55402 and Daniel J. Herber, Esq., University of Minnesota, 360 McNamara Alumni Center, 200 Oak Street SE, Minneapolis, MN 55455, counsel for plaintiff.

    Phillip R. Dupre and Lauren D. Grady, DOJ-Environment and Natural Res. Div., Environmental Defense Section, P.O. Box 7611, Washington DC, 20044 and Friedrich A.P. Siekert, United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis, MN 55415, counsel for defendant United States of America.

    Stephanie R. Feingold, Esq. and Morgan Lewis & Bockus, 502 Carnegie Center, 2nd Floor, Princeton, NJ 08540, counsel for defendant E.I. du Pont de Nemours and Company.

This matter is before the court upon the motion for judgment on the pleadings by defendant United States of America. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court denies the motion.

## BACKGROUND

This environmental dispute arises out of a contract between plaintiff Regents of the University of Minnesota (University) and the United States. During World War II, the United States operated the Gopher Ordinance Works (GOW), a facility "designed to produce smokeless cannon and rifle powder, oleum and other materials used in the manufacture of smokeless powder." Compl. ¶¶ 3, 21. The GOW was located on 13,600 acres of land in Rosemount, Minnesota (Site). Id. ¶¶ 2, 29. The GOW was designed, constructed, and operated by defendant E.I. du Pont de Nemours and Company (DuPont). Id. ¶¶ 4, 30-31. Between November 1994 and August 1945, the GOW produced "an estimated 29 million pounds of smokeless powder, 80 million pounds of oleum and 51 million pounds of nitric acid." Id. ¶ 33.

After the war, the United States determined that it no longer needed the GOW and transferred the Site to the University through two quitclaim deeds and corresponding contracts for sale.[1] Id. ¶¶ 6, 38. The first deed, executed in 1947, conveyed a 4,687-acre parcel consisting largely of open space (1947 Parcel). Id. ¶ 43; Countercl. ¶ 28. The second deed, executed in 1948, conveyed a 3,320-parcel that "contained most of the buildings, infrastructure, and equipment transferred to the University" (1948 Parcel). Compl. ¶ 43; Countercl. ¶ 28. The instant motion only involves claims and

---

[1] The court will not set forth all of the details leading to the transfer of the land to the University or any post-deed activities and tenancies immaterial to the present motion.

counterclaims relating to the 1948 Parcel. The deed conveying the 1948 Parcel (1948 Deed) contains the following indemnification provision:

> By the acceptance of this instrument and as a further consideration for this conveyance, the [University] herein covenants and agrees for itself and its successors and assigns to assume all risk for all personal injuries and property damages arising out of ownership, maintenance, use and occupation of the foregoing property, and further covenants and agrees to indemnify and save harmless the ... the United States of America ... against any and all liability claims, causes of action or suits due to, arising out of, or resulting from, immediately or remotely, the possible contaminated condition, ownership, use, occupation or presence of the [University], or any other person upon the property lawfully or otherwise.

Answer and Countercl. Ex. 2 at 5.

The corresponding contract for sale (1948 Contract) includes the following provision:

> The [University] acknowledges that the above-described property may be contaminated and it assumes all liability and responsibility which may arise out of the said contaminated condition, decontamination and use and occupancy of the said property. The [University] further agrees that it will perform at its sole expense any and all decontamination work or functions found necessary in order to render the above-described property free of any and all dangers of explosives and suitable for general usage.

Id. Ex. 5 at 4.

Since the mid-1980s, the Site has been subject to numerous environmental studies and investigations, which have revealed the release or threatened release of hazardous materials at the Site. See Compl. ¶¶ 52-81; Countercl. ¶¶ 73-74. The Minnesota Pollution

3

Control Agency has identified the University, the United States Army Corps of Engineers, and DuPont as "responsible persons" under the Minnesota Environmental Response and Liability Act (MERLA). Compl. ¶¶ 75-76. According to the University, it has incurred more than $3 million in "environmental investigation and other necessary response costs in connection with the release or threatened release of hazardous substances at the Site" and expects that amount to increase. Id. ¶ 82. The University has unsuccessfully demanded reimbursement from the United States. Id. ¶ 83.

On August 11, 2017, the University commenced this suit seeking damages and declaratory relief from the United States and DuPont under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) and from DuPont under MERLA. ECF No. 1. On November 17, 2017, the United States answered the complaint and filed counterclaims alleging that (1) the University breached the 1948 Deed and 1948 Contract by seeking reimbursement for environmental response costs and failing to indemnify the United States against all lawsuits and claims relating to the 1948 Parcel; (2) the University should be apportioned at least some of any response costs found to be due under CERCLA; and (3) the University should be held liable for all response costs incurred or that may be incurred in connection with the Site. ECF No. 24 ¶¶ 106-22. DuPont answered the complaint, but has not filed counterclaims or

cross-claims.[2]  ECF No. 25.

The United States now moves for partial judgment on the pleadings as to its defense to the University's CERCLA claim relating to the 1948 Parcel and its breach-of-contract counterclaim. Specifically, the United States requests that the court hold that the University is not entitled to recover its response costs relating to the 1948 Parcel and that the University is obligated to indemnify and hold harmless the United States for all past, current, and future response costs relating to the 1948 Parcel. DuPont has not joined in the motion.

## DISCUSSION

### I. Standard of Review

The same standard of review applies to motions under Federal Rules of Civil Procedure 12(c) and 12(b)(6). Ashley Cty., Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009). Thus, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (citation and internal

---

[2] In January 2015, DuPont submitted a claim to the United States requesting reimbursement for response costs and attorney's fees incurred under CERCLA relating to the Site. Countercl. ¶ 88. In September 2017, DuPont requested indemnification from the United States relating to this case. Id. ¶ 89. Those claims remain pending.

quotation marks omitted). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

**II. CERCLA Defense**

The United States argues that it is entitled to judgment in its favor on the University's CERCLA claim because in the 1948 Contract, the University expressly assumed all liability relating to condition of the 1948 Parcel.

"The plain language of the contract will be viewed as controlling if it is unambiguous on its face." Mata v. United States, 114 Fed. Cl. 736, 745 (2014). A contract is ambiguous if it is "susceptible to more than one reasonable meaning." Id. (quoting Barron Bancshares, Inc. v. United States, 366 F.3d 1360, 1375-76 (Fed. Cir. 2004)). "The fact that the parties have differing interpretations of a contract provision does not, standing alone, create an ambiguity." Id. A contract will be considered ambiguous only if "it sustains the interpretations

advanced by both parties to the suit." Id. (quoting Pacificorp Capital, Inc. v. United States, 25 Cl. Ct. 707, 716 (1992)).

According to the United States, the 1948 Deed and Contract obligate the University to cover any and all costs relating to CERCLA claims. The University argues, on the other hand, that the contracts address only the risk of residual explosives rather than general environmental liability. The court finds that the contracts, read as a whole, support both parties' interpretations and therefore are ambiguous. Neither contract clearly states that the University assumed liability relating to environmental contamination. See Answer and Countercl. Ex. 2 at 5; id. Ex. 5 at 4. However, it is also not clear that environmental liability is <u>not</u> encompassed within the provisions at issue. Indeed, the provisions are broadly written to suggest the intent to include liability beyond the risks presented by residual explosives. See id. Ex. 2 at 5; id. Ex. 5 at 4. But whether environmental liability is included cannot be determined on the present record absent additional factual development.[3]

The ambiguity is underscored by the fact that the contracts pre-dated CERCLA by thirty years, which raises the question of whether the parties were even cognizant of potential environmental

---

[3] The parties dispute whether federal contract law allows the court to consider extrinsic evidence in construing an unambiguous contract. Because the court determines that the contracts are ambiguous, it need not resolve that issue.

contamination at the time. Thus, the court cannot determine at this early stage that the parties intended the provisions at issue to include environmental liability. As a result, the court must deny the motion as to the University's CERCLA claim.

**III. Breach-of-contract Counterclaim**

The United States also argues that it is entitled to judgment on its breach-of-contract counterclaim because the University breached the indemnification provision in the 1948 Deed by bringing suit against the United States under CERCLA.[4]

As stated above, the court cannot conclude as a matter of law that the 1948 Deed and Contract bind the University so broadly. As a result, the court must also deny the motion as to the counterclaim.

### CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion for judgment on the pleadings [ECF No. 48] is denied.

Dated: July 12, 2018

s/David S. Doty
David S. Doty, Judge
United States District Court

---

[4] The United States also argues that the University is obligated to indemnify the United States in the claims against it raised by DuPont.

8