IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REGENTS OF THE UNIVERSITY
OF MINNESOTA,

    Plaintiff,

    v.                      Case No. 17-cv-03690 (DSD-ECW)

UNITED STATES OF AMERICA; AND
E.I. DU PONT DE NEMOURS AND CO.,

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**CONSENT DECREE**

This Consent Decree ("Consent Decree") is entered into between Plaintiff Regents

of the University of Minnesota (the "University") and Defendants United States of

America ("United States") and E.I. du Pont de Nemours and Company ("DuPont")

(hereinafter sometimes collectively, the "Parties").

## RECITALS

A.    This case concerns a dispute between the University, the United States, and
DuPont regarding the allocation of responsibility for Response Actions and for the
payment of Response Costs related to property owned by the University, including
UMore Park and Vermillion Highlands Research, Recreation and Wildlife
Management Area, located in the City of Rosemount and the City of Empire, in
Dakota County, Minnesota, that previously formed part of the Gopher Ordnance
Works, a World War II government-owned, contractor operated production
facility (the "Site" as further defined in Paragraph 5, below).

B.    The University filed a Complaint in this case, brought pursuant to the
Comprehensive Environmental  Response, Compensation, and Liability Act
("CERCLA"), 42 U.S.C. §§ 9601-9675, and the Minnesota Environmental
Response and Liability Act ("MERLA"), Minn. Stat. 115B.01 *et seq*., alleging that
the United States and DuPont are liable to the University for past and future
Response Costs incurred or to be incurred regarding releases of hazardous
substances at, on, or from the Site, and seeking recovery of past Response Costs
and a declaratory judgment of the United States' and DuPont's liability for future
Response Costs.

C.    Defendants United States and DuPont filed counterclaims against the
University alleging that, to the extent they are liable to the University, the
University is liable for contribution under CERCLA § 113(f), 42 U.S.C. § 9613(f),
to Defendants as Plaintiff is a potentially responsible party with regard to the Site
within the meaning of CERCLA § 107(a), 42 U.S.C. § 9607(a).

D.    Defendant DuPont filed cross claims alleging that, to the extent it is liable
to the University, the United States is liable for contribution under CERCLA §
113(f), 42 U.S.C. § 9613(f), to DuPont, as the United States is a potentially
responsible party with regard to the Site within the meaning of CERCLA §107(a),
42 U.S.C. § 9607(a).

E.    Defendant United States filed a counterclaim alleging that the University is
liable to the United States under CERCLA § 107(a), 42 U.S.C. § 9607(a), for past

1

and future Response Costs incurred or to be incurred regarding releases of hazardous substances at, on, or from the Site.

F.    Defendant United States also filed a counterclaim alleging that the University breached contracts with the United States to indemnify and hold the United States harmless for liability related to the possible contaminated condition of the Site, including through the act of bringing this lawsuit against the United States.

G.    The Parties desire to enter into this Consent Decree to reach a full and final resolution and settlement of all claims in this case, without the admission or adjudication of any matter of fact or law. Consistent with this intention, the Parties desire that the Court's non-final, substantive rulings on the claims brought by the parties in this case be vacated. This Consent Decree shall not constitute or be construed as an admission of liability by any of the Parties or as an admission of violation of any law, rule, regulation, or policy by any of the Parties. Furthermore, this Consent Decree shall not constitute or be construed as an admission or denial by any of the Parties with respect to any factual or legal allegation or issue.

H.    The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and at arm's length, that the Parties had access to competent legal and expert advice, that the terms of the Consent Decree represent a fair and equitable compromise of the claims in this case, that such claims were vigorously contested, and that this Consent Decree will avoid further prolonged and complicated litigation and appeals between the Parties. The Parties agree, and the Court finds, that the Consent Decree is fair, reasonable, in the public interest, and is consistent with CERCLA.

## CONSENT DECREE

1.    Jurisdiction. This Court has subject matter jurisdiction over the claims in this case pursuant to 28 U.S.C. §§ 1331, 1346, and 1367 and 42 U.S.C. §§ 9607 and 9613(b), and also has personal jurisdiction over the Parties. Solely for the purposes of this Consent Decree and the underlying complaint, the United States and DuPont waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District.

2.    <u>Parties Bound</u>. The Parties to this Consent Decree are the University, the United States, and DuPont, as defined in Paragraph 5 below. This Consent Decree applies to, is binding upon, and inures solely to the benefit of the Parties. No change in ownership or governmental, corporate, or other legal status, including but not limited to any bankruptcy, transfer of stock, assets, ownership interests, or real or personal property, shall alter the Parties' responsibilities and obligations under this Consent Decree.

3.    <u>No Third-Party Beneficiary</u>. This Consent Decree does not inure to the benefit of any party, person, or entity other than the Parties. Except as provided in Paragraph 11, nothing in this Consent Decree shall be construed to make any other person or entity not executing this Consent Decree a third-party beneficiary of this Consent Decree, or to create any other rights in, or grant any cause of action to, any person not a party to this Consent Decree.

4.    <u>Definitions</u>. Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA or in federal regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever the following terms are used in this Consent Decree the following definitions shall apply for purposes of this Consent Decree:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, as amended, <u>42 U.S.C. §§ 9601-75</u>.

"Complaint" shall mean the complaint filed in this case, including any amendments thereto.

"Consent Decree" shall mean this Consent Decree.

3

"Covered Substance" shall mean any solid or hazardous waste, hazardous substance, waste material, petroleum, pollutants, or other contaminants under federal law or Minnesota state law, including but not limited to all contaminants subject to the remedial action requirements of the MPCA.

"Day" shall mean a calendar day. When computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday or federal or State of Minnesota legal holiday, the period shall run until the close of business on the next working day.

"Department of Defense" shall mean the United States Department of Defense, including its offices, agencies, activities, commands, and instrumentalities, and the Military Departments, as defined in 10 U.S.C. § 111.

"DOJ" shall mean the United States Department of Justice and its successor departments, agencies, or instrumentalities.

"DuPont" shall mean E.I. du Pont de Nemours and Company, including its predecessors-in-interest as well as its successors, assigns, designees, affiliates, and subsidiaries.

"Effective Date" shall mean the date upon which the approval of this Consent Decree is recorded on the Court's docket.

"EPA" shall mean the United States Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year. Rates are available online at https://www.epa.gov/superfund/superfund-interest-rates.

"MERLA" shall mean the Minnesota Environmental Response and Liability Act, Minn. Stat. 115B.01 *et seq*.

"MPCA" shall mean the Minnesota Pollution Control Agency with environmental regulatory authority over the Response Actions to be conducted at the Site.

"Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper- or lower-case letter.

"Parties" shall mean the United States of America, the Regents of the University of Minnesota, and E.I. du Pont de Nemours and Company, all as defined in this Paragraph 5.

"RCRA" means the Solid Waste Disposal Act, 42 U.S.C. §§ 6901 – 6992 (also known as the Resource Conservation and Recovery Act).

"Response Actions" shall mean the environmental response actions for any Covered Substance released at, on, or from the Site, as required by the MPCA under MERLA and/or under any other federal, state, or local law, including CERCLA, as well as all related activities necessary to achieve remediation goals to protect human health and the environment (including any future requirements arising under applicable federal, state, or local law).

"Response Costs" shall mean all costs, including but not limited to direct and indirect costs, incurred or to be incurred by the University or any other person or entity related to the Response Actions, including but not limited to the cleanup of, response to, or the corrective action or closure of releases or threatened releases of Covered Substances at, on, or from the Site, including costs to comply with or implement any past or future federal, state, or local environmental requirement, whether voluntary or compelled, or to otherwise address releases, or threatened releases, of Covered Substances at, on, or from the Site. This includes any and all costs incurred by the University or any other person or entity pursuant to CERCLA, RCRA, or other federal law, state law, or common law related to Response Actions at the Site. Response Costs also include accrued Interest on all such costs and including all payments to, or costs of, federal, state, local, or other governmental authorities. Response Costs include all costs for actions by the University or any other person or entity to comply with specific or general environmental requirements and facility maintenance, development, repair, modification, compliance, or operational activities that are in any way related to Response Actions to address releases of Covered Substances at, on, or from the Site, in the past or in the future.

"Settling Federal Agency" shall mean the Department of Defense as defined in 10 U.S.C. § 111 and any other department, agency, or instrumentality of the United States that may be liable for Response Costs, and their respective predecessor and successor departments, agencies, or instrumentalities.

"Site" shall mean the property that was conveyed to the University in the two quitclaim deeds in Appendix A and includes UMore Park and Vermillion Highlands Research, Recreation and Wildlife Management Area, located in the City of Rosemount and the City of Empire in Dakota County, Minnesota. The approximate boundaries of the Site are depicted in Appendix B. The Site also includes any areas to which Covered Substances that were initially released at the Site may have migrated.

5

"UMRRC Site" means the University of Minnesota Rosemount Research Center Superfund Site (EPA Id. No. MND980613780), which consists of four former waste disposal sites and associated groundwater contamination. Releases or threatened releases from the former Gopher Ordnance Works were not addressed as part of the UMRRC Site. The UMRRC Site was removed by the MPCA from its Permanent List of Priorities in September 2000 and by the EPA from the National Priorities List on February 6, 2001. The UMRRC Site remains subject to Five-Year Reviews by EPA, with the last such review completed in June 2022.

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including but not limited to EPA and the Settling Federal Agency.

"United States Response Costs" shall mean all costs, including but not limited to direct and indirect costs, that the Department of Defense or DOJ on behalf of Department of Defense has paid at or in connection with the Site through the Effective Date.

"University" shall mean the University of Minnesota, which is an institution of higher education created by charter and perpetuated by the Constitution of the State of Minnesota, Art. XIII, § 3, and is an instrumentality of the State of Minnesota, and shall include the University's  regents, officers, employees, and agents.

5.    <u>Performance of the Work</u>. The University will ensure that all future required Response Actions at the Site are completed in accordance with applicable environmental laws and regulations including CERCLA and MERLA. The Parties agree that oversight and approval by MPCA, as lead regulatory agency for the Site, will establish compliance with this requirement.

6.    <u>Payment by the United States</u>

(a) As soon as reasonably practicable after the Effective Date, the United States, on behalf of the Settling Federal Agency and DuPont, shall pay $13,000,000 to the University. Payment will be made by Automated Clearinghouse (ACH) Electronic

Funds Transfer to the University in accordance with instructions the University shall provide to the United States prior to the Effective Date.

(b) In the event the payment by the United States described in Paragraph 6(a) above is not made within 90 days after the Effective Date, Interest on the unpaid balance shall accrue beginning on the 91st day after the Effective Date and continuing through the date of payment. In the event that the United States is unable to make the payment due to an error in the electronic funds transfer instructions provided by the University, any time limits for payments by the United States shall be tolled until after the correct account information is provided to the United States.

7.      Anti-Deficiency Act. All payment obligations by the United States under this Consent Decree are subject to the availability of funds appropriated for such purpose. No provision of this Consent Decree shall be interpreted as, or constitute a commitment or requirement, that the United States obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable federal law, regulation, or requirement.

8.      University's Releases and Covenant Not to Sue. Upon the Effective Date, the University releases the United States and DuPont from the claims it brought against them in this case. Further, upon the Effective Date, the University covenants not to sue and agrees not to assert any claims or causes of action against the United States or

DuPont, or their respective officers, contractors or employees, with respect to Response Actions and Response Costs, including but not limited to:

(a) any direct or indirect claim for reimbursement from the EPA Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

(b) any claim arising out of Response Actions and any claim arising out of Response Costs, including any claim under the United States Constitution, the Constitution of the State of Minnesota, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, or at common law; or

(c) any claim pursuant to Section 107 or 113 of CERCLA, 42 U.S.C. § 9607 or 9613, Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), or state law for Response Actions and Response Costs.

9.     Indemnification of the United States and DuPont by the University. The University shall indemnify and hold harmless the United States, and shall indemnify, hold harmless, and defend DuPont (including reimbursement of DuPont's reasonable attorney's fees and costs incurred from the date of tender by DuPont to the University of a claim or demand that is covered by this Paragraph 9 until the University assumes the defense of such claim or demand), from and against any and all claims or demands by third parties under CERCLA, MERLA, or any other law, including future changes to the

law, for Response Actions and Response Costs where the release or threatened release occurred at, on, or from the Site prior to the Effective Date. The United States or DuPont shall give the University written notice pursuant to Paragraph 15 of this Consent Decree promptly after receipt of any such Claims for which the United States or DuPont is aware and seeks indemnification from the University pursuant to this Paragraph 9. Upon the University's request, the United States and/or DuPont shall provide documentation relating to the request for indemnification under this Paragraph 9.

10.    <u>United States' Releases and Covenant Not to Sue</u>. Upon the Effective Date, the United States forever releases, discharges, covenants not to sue, and agrees not to assert any claims or causes of action against the University, for matters that were asserted by the United States in its counterclaims against the University in this case, as well as any compulsory counterclaims under Rule 13(a) of the Federal Rules of Civil Procedure. The United States agrees not to assert any direct or indirect claim for reimbursement against DuPont through CERCLA §§ 106(b)(2), 107, 113 or any other provision of law with respect to the Site and this Consent Decree.  This agreement not to assert claims against DuPont does not apply to any contract claims the United States may raise in *The Chemours Company v. The United States of America*, 18-01377 (Fed. Cl.).

11.    <u>DuPont's Releases and Covenant Not to Sue</u>. Upon the Effective Date, DuPont forever releases, discharges, covenants not to sue, and agrees not to assert any claims or cause of action against the University and United States, and their respective officers, contractors or employees, for the matters that were asserted by DuPont in its

counterclaims against the University, as well as any compulsory counterclaims under Rule 13(a) of the Federal Rules of Civil Procedure, and crossclaims against the United States, in this case. DuPont further forever releases and covenants not to sue the University or United States for any claims it has accrued under CERCLA or MERLA related to the Site as of the Effective Date. This release and covenant not to sue does not apply to the claims asserted by The Chemours Company against the United States for breach of contract and for reimbursement of expenses and declaratory relief pending in *The Chemours Company v. The United States of America*, Case 18-01377 (Fed. Cl.).

12.   <u>United States' Reservations of Rights</u>. Notwithstanding Paragraph 10, above, the United States reserves any rights it may have against the University under CERCLA or any other federal, state, or local law or regulation, or under the common law, for Response Actions or Response Costs that may be taken or incurred after the Effective Date regarding the Site. The United States reserves any rights it may have against the University under CERCLA or any other federal, state, or local law or regulation, or under the common law, for response actions or response costs (as defined in CERCLA) for the UMRRC Site by any federal agency, including EPA. The United States reserves any rights it may have against the University and DuPont for any claim for natural resource damages made on behalf of any federal natural resource damage trustee with respect to the Site or the UMRRC Site. Nothing in this Consent Decree should be construed to conclude that any natural resource damages exist regarding the

Site or the UMRRC Site, or that any Party has any responsibility for any such natural resource damages, should they exist.

13.    <u>Contribution Protection</u> – CERCLA §113(f). The Parties acknowledge and agree that the payment to be made by the United States on behalf of itself and DuPont pursuant to this Consent Decree represents a good faith compromise of disputed claims and that the compromise represents a fair, reasonable, and equitable discharge for the matters addressed in this Consent Decree. The Court finds that the United States and DuPont are entitled to contribution protection pursuant to <u>42 U.S.C. § 9613(f)</u>, or as may otherwise be provided by law, including common law, for the "matters addressed" in this Consent Decree, extinguishing the United States' or DuPont's liability to persons not a Party to this Consent Decree. The "matters addressed" in this Consent Decree are the Response Actions and Response Costs regarding the Site.

14.    <u>Contribution Protection</u> – CERCLA §113(f)(2).  The Parties further agree, and by entering this Consent Decree this Court finds, that this Consent Decree constitutes a judicially-approved settlement pursuant to which the University and DuPont have, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(2) of CERCLA, <u>42 U.S.C. § 9613(f)(2)</u>, and are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for the "additional matters addressed" in this Consent Decree. The "additional matters addressed" in this Consent Decree are the United States' Response Costs.

15. <u>Notices and Submissions</u>. Whenever notice is required to be given or a document is required to be sent by one Party to another under this Consent Decree, it shall be directed to the Party at the addresses specified below, unless a Party gives notice of a change to the other Parties in writing. Written notice as specified in this Paragraph shall constitute complete satisfaction of any written notice requirement of the Consent Decree.

As to the Justice Department or the United States

> Chief
> Environmental Defense Section
> Environment and Natural Resources
> Division
> U.S. Dept. of Justice
> P.O. Box 7611
> Washington, U.C. 20044-761 1
> Re: DJ No. 90-11-6-20283/1
> MailProcessing_EDS.ENRD@usdoj.gov

> With a copy to:

> HQUSACE
> Office of the Chief Counsel
> CECC-E
> 441 G Street, NW
> Washington, D.C. 20314

As to the Regents of the University of Minnesota:

> Board of Regents
> Attn: Executive Director and Corporate Secretary
> 600 McNamara Alumni Center
> 200 Oak Street SE
> Minneapolis, MN 55455

With a copy to:

Office of the General Counsel
Attn:  General Counsel
University of Minnesota
360 McNamara Alumni Center
200 Oak Street S.E.
Minneapolis, MN 55455


As to E.I. du Pont de Nemours and Company :

Todd A. Coomes
Associate General Counsel
Chemours Legal – 655-9
1007 Market Street
Wilmington, DE 19899
Todd.coomes@chemours.com
302-773-1306

Patricia McGee
Corporate Counsel – Environmental
Corteva Legal
974 Centre Road  Bldg 735
Wilmington, DE 19805
Patricia.mcgee@corteva.com
302-485-3046

16.    <u>Retention of Jurisdiction</u>.  This Court shall retain jurisdiction over this case for the purpose of interpreting and enforcing the terms of this Consent Decree.

17.    <u>Recovery of Enforcement Costs.</u>  With respect to disputes between the University and DuPont, the prevailing Party shall be entitled to recover its reasonable attorney's fees and costs in any action to enforce the terms of the Consent Decree.

18.    <u>Modifications in Writing</u>. Any material modification to this Consent Decree shall be in writing, signed by the United States, the University, and DuPont, and effective

only upon approval by the Court. Minor or unmaterial modification, such as, for example, mailing addresses, do not require approval by the Court.

19. <u>Signatories</u>. The undersigned representatives of Parties certify that they are fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind their respective represented Party to this Consent Decree.

20. <u>Lodging and Public Comment.</u> This Consent Decree shall be lodged with the Court for a period of at least 30 days for public notice and comment. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that this Consent Decree is inappropriate, improper, or inadequate. The University and DuPont consent to the entry of this Consent Decree without further notice.

21. <u>Complete Agreement</u>. This Consent Decree contains the complete agreement between the Parties regarding the subject matter addressed herein and fully supersedes all prior contracts, agreements, understandings, negotiations, or discussions, oral or written, relating to the subject matter hereof. There are no warranties, representations, agreements, or understandings, oral or written, relating to the subject matter herein that are not fully expressed or provided for herein. If for any reason the Court should decline to approve this Consent Decree in the form presented, this Consent Decree shall not become effective, this Consent Decree will be void, and this Consent Decree and its terms or content may not be used in any way by the Parties.

22.     <u>Headings</u>. Any Paragraph or subparagraph headings in this Consent Decree are provided solely as a matter of convenience to the reader and shall not be construed to alter the meaning of any Paragraph or provisions of this Consent Decree.

23.     <u>Governing Law</u>. This Consent Decree shall be governed and interpreted in accordance with federal law.

24.     <u>Counterparts</u>. This Consent Decree may be executed in original counterparts, all of which together shall be deemed to constitute one Consent Decree. The execution of one counterpart by any Party shall have the same force and effect as if that Party had signed all other counterparts.

25.     <u>No Use as Evidence</u>. This Consent Decree shall not be admitted into evidence or be admissible as evidence in any action or proceeding other than in this case in which this Consent Decree is entered, except for the following:

(a) A motion brought by the Parties to enforce this Consent Decree;

(b) A motion or action to enforce the indemnification of the United States or DuPont by the University under Paragraph 9; and

(c) Any proceeding where the United States or DuPont seeks to establish that it is entitled to protection from claims under this Consent Decree and the proceedings in the Court of Federal Claims captioned *The Chemours Company v. The United States of America*, Case No. 18-01377.

26. <u>No Assignment or Transfer</u>. The Parties warrant and represent that they have made no assignment or transfer of all or any part of their rights arising out of or relating to the matters addressed in this Consent Decree, including (with respect to the University) to the State of Minnesota, or to any other person or entity. For purposes of this Paragraph, "assignment or transfer" shall not be deemed to include any general governmental or corporate reorganizations, mergers, assignments, transfers, or acquisitions that have occurred prior to or during this litigation.

27. <u>Vacatur of Prior Stipulations and Orders</u>. Upon entry of this Consent Decree by the Court, the Joint Stipulations of Fact and Law dated March 8, 2022, <u>ECF No. 181</u>, is hereby superseded by this Consent Decree, vacated, and no longer in effect. Further, the Court's ORDER denying Motion for Judgment on the Pleadings dated July 12, 2018 (<u>ECF No. 57</u>), ORDER regarding Partial Summary Judgment Motions dated October 14, 2020 (<u>ECF No. 124</u>), and ORDER regarding Cross-Motions for Summary Judgment and Motions to Exclude Expert Testimony dated November 3, 2022 (<u>ECF No. 237</u>) are also hereby superseded by this Consent Decree, vacated, and no longer in effect.

28. <u>Waiver of Right to Appeal</u>. Based upon the vacatur of ORDERS in Paragraph 27, above, upon entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the Parties. The United States waives any right to appeal the ORDERS referenced in Paragraph 27, or any other order previously issued by the Court in this case.

UPON CONSIDERATION OF THE FOREGOING, the Court hereby finds that this Consent Decree is fair and reasonable, both procedurally and substantively, consistent with applicable law, in good faith, and in the public interest. The foregoing Consent Decree is hereby ENTERED.

This Court expressly directs, pursuant to Fed. R. Civ. P. 54 and 58, ENTRY OF FINAL JUDGMENT in accordance with the terms of this Consent Decree.

So ORDERED this 4th day of September 2024

s/David S. Doty
United States District Judge

FOR THE UNITED STATES OF AMERICA


TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

_____
Phillip R. Dupré (TX #24069650)
Environmental Defense Section
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 598-9530
Fax: (202) 514-8865
E-mail: phillip.r.dupre@usdoj.gov

Lauren D. Grady (IL #6315393)
Pedro Segura
Environmental Enforcement Section
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 514-2794
Fax: (202) 616-6584
Email: lauren.grady@usdoj.gov

FOR THE REGENTS OF THE UNIVERSITY OF MINNESOTA


LATHROP GPM LLP


By  s/Rick E. Kubler
Rick E. Kubler, #190007
Richard C. Landon, #392306
3100 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 632-3224
Rick.Kubler@lathropgpm.com
Richard.Landon@lathropgpm.com

and

UNIVERSITY OF MINNESOTA
OFFICE OF GENERAL COUNSEL

Douglas R. Peterson, #14437X
Brian J. Slovut, #236846
Dan Herber, #386402
360 McNamara Alumni Center
200 Oak Street, S.E.
Minneapolis, Minnesota 55455
Telephone: (612) 624-4100
dougp@umn.edu
slov0002@umn.edu
herb0089@umn.edu

FOR E.I. DU PONT DE NEMOURS AND COMPANY

MORGAN LEWIS & BOCKIUS, LLP

By_____
John McGahren, Esq. (*pro hac vice*)
NJ Bar No. 046791990
Stephanie R. Feingold, Esq. (*pro hac vice*)
NJ Bar No. 023182005
502 Carnegie Center
Princeton, NJ 07302
Telephone: (609) 919-6700
Facsimile: (609) 919-6701
john.mcgahren@morganlewis.com
Stephanie.feingold@morganlewis.com

Debra J Carfora, Esq. (*pro hac vice*)
DC Bar No. 1521057
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-5757
debra.carfora@morganlewis.com

Amy J. Talarico, Esq.
State Bar No. 0323780
One Market Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1227
Facsimile: (415) 442-1001
amy.talarico@morganlewis.com

*ATTORNEYS FOR DEFENDANT*
*E. I. DU PONT DE NEMOURS AND COMPANY*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REGENTS OF THE UNIVERSITY
OF MINNESOTA,

    Plaintiff,

    v.                            Case No. 17-cv-03690 (DSD-ECW)

UNITED STATES OF AMERICA; AND
E.I. DU PONT DE NEMOURS AND CO.,

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

# APPENDIX A

## CONSENT DECREE

C
O
P
Y

C
O
P
Y

## QUITCLAIM DEED

THIS INDENTURE, made this 1st day of August, 1947, between the UNITED STATES OF AMERICA, acting by and through the Federal Farm Mortgage Corporation, under and pursuant to the powers and authority contained in the provisions of the Surplus Property Act of 1944 (58 Stat. 765); and WAA Regulation No. 1, as amended; Order of the Secretary of Agriculture dated April 26, 1945 (10 F. R. 4647); and Order of the Governor of the Farm Credit Administration dated April 28, 1945 (10 F. R. 4694), GRANTOR, and, REGENTS OF THE UNIVERSITY OF MINNESOTA, a body corporate, created by the Territorial Government of Minnesota and perpetuated by the Constitution of the State of Minnesota, with post office address in Minneapolis, Minnesota, GRANTEE,

WITNESSETH: That the said GRANTOR, in consideration of the covenants, conditions, restrictions and reservations hereafter contained, and other good and valuable consideration, the receipt of which is hereby acknowledged, does hereby grant, bargain, quitclaim and convey unto the said GRANTEE, its successors and assigns, forever, the following described property in the County of Dakota, State of Minnesota, to-wit:

Section Four (4) except the South 2 rods thereof; the East one-half (E$\frac{1}{2}$) of Section Ten (10) except the North 2 rods thereof and except the east 2 rods thereof; Section Eleven (11) except the West 2 rods thereof; the West one-half (W$\frac{1}{2}$) of Section Twelve (12); Section Thirteen (13) except a strip of land 4 rods wide, being 2 rods on each side of the right-of-way of the public road over and across the Northeast Quarter (NE$\frac{1}{4}$) thereof; Section Fourteen (14) except the West 2 rods thereof; all in Township One hundred Fourteen (114) North, Range Nineteen (19) West.

The Southwest Quarter (SW$\frac{1}{4}$) of Section Twenty-five (25); the Southwest Quarter (SW$\frac{1}{4}$) of Section Twenty-seven (27); the South Half (S$\frac{1}{2}$) of Section Twenty-eight (28); Section Thirty-three (33); the Northwest Quarter (NW$\frac{1}{4}$) of Section Thirty-four (34); the North Half of the North Half of the Southwest Quarter (N$\frac{1}{2}$N$\frac{1}{2}$SW$\frac{1}{4}$) of Section Thirty-four (34); also the spur track and right-of-way therefor over that part of the Southeast Quarter (SE$\frac{1}{4}$) of Section Twenty-five (25) lying west of the Chicago and Great Western Railroad right-of-way as reserved by the Grantor in a deed dated March 25, 1947 to Thomas W. Strathern and Tillie Strathern; all in Township One hundred fifteen (115) North, Range Nineteen (19) West.

All that part of the Southeast Quarter (SE$\frac{1}{4}$) of Section Twenty-nine (29), Township One hundred fifteen (115) North, Range Nineteen (19) West, which is included within the lines hereinafter described, lying East of the present right-of-way of the Chicago, Milwaukee, St. Paul and Pacific Railroad Company

The northerly boundary line of said tract is described as follows:

START at a point in the east line of said Section Twenty-nine (29) distant 1270 feet north of the southeast corner thereof; thence westerly on a straight line making an angle of 89 degrees 44 minutes in the southwest quadrant with said east line, 1398.2 feet to point of curve to the right with a radius of 743.09 feet; thence westerly along said curve 88.6 feet; thence continue northwesterly on a curve to the right with a radius of 523.69 feet compound to the last described curve, a distance of 887 feet to the end of said curve; thence northeasterly on a tangent to said curve 155 feet, to a point in the easterly boundary line of the Chicago, Milwaukee, St. Paul and Pacific Railroad Company's right-of-way, which line is parallel to and 50 feet southeasterly, measured at right angles from the center line of said Railroad Company's main track as the same is now there laid and operated.

The southerly boundary line of said tract is described as follows:

START at a point in the east line of said Section Twenty-nine (29) distant 1170 feet north of the southeast corner thereof; thence westerly on a straight line making an angle of 89 degrees 44 minutes in the southwest quadrant with said east line, 1898.6 feet to a point of curve to the left with a radius of 637.27 feet; thence southwesterly along said curve 555 feet to the end of said curve; thence southwesterly on a tangent to said curve 167 feet, to a point in the hereinabove described easterly boundary line of the Chicago, Milwaukee, St. Paul and Pacific Railroad Company's right-of-way.

All of the Grantor's right, title and interest in and to a perpetual easement for the location, construction, operation, maintenance and patrol of a water pipe line in, over and upon a strip of land 75 feet wide across the Southeast Quarter (SE¼) of Section Twenty-nine (29), as included within the lines hereinafter described:

Beginning at a point in the East line of said Section Twenty-nine (29), distant 777.8 feet south of the East Quarter corner thereof, thence Westerly 1958.24 feet on a straight line, making an angle of 90 degrees 16 minutes in the Northwest quadrant with said East line, thence Southerly 75 feet along a curve with a radius of 523.69 feet; thence Easterly, on a straight line, parallel to the line first described above, a distance of 1958.24 feet, to a point in the East line of said Section Twenty-nine (29), thence North 75 feet to the point of beginning, all in Township One hundred fifteen (115) North, Range Nineteen (19) West.

Together with the improvements and betterments on said lands, including, but not limited to, buildings and structures and customary building installations and railway trackage.

The aforesaid premises are hereby conveyed subject, however, to the following easements and encumbrances:

1. All agricultural and residence leases now in effect, all of which expire not later than February 28, 1948.

-2-

2. Easements for pipe line to the Minnesota Northern Natural Gas Company or its successors.

3. Easements to the Northern States Power Company for electric transmission and distribution lines.

4. Easements for public roads and highways and public utilities.

5. Any other easements in open and notorious use by the owner thereof, not specifically mentioned herein.

Said land was duly declared surplus and assigned to the Federal Farm Mortgage Corporation as disposal agency pursuant to the provisions of the above mentioned Act and WAA Regulation No. 1, as amended.

TO HAVE AND TO HOLD all and singular said premises together with the appurtenances, unto the said GRANTEE and its successors and assigns forever, provided however that this conveyance is made and accepted upon each of the following conditions subsequent which shall be binding upon and enforceable against said GRANTEE, its successors or assigns and each of them, as follows:

FIRST: That for a period of 25 years from the date of this conveyance, said premises shall be continuously used in accordance with the program set forth in detail by the GRANTEE in its application dated July 15, 1946, and all amendments thereto, as recommended by the United States Office of Education, and accepted by the GRANTOR.

SECOND: That for a period of 25 years from the date of this conveyance, the GRANTEE, its successors or assigns shall file a semi-annual report with the War Assets Administration or its successor in function, setting forth its curricula and other pertinent data establishing its continuous use for the purposes first above set forth.

THIRD: That it will not resell or lease said premises within 25 years from the date of this instrument without first obtaining the written authorization of the War Assets Administration to such resale or lease.

That in the event there is a breach of the above conditions by the GRANTEE, its successors or assigns, whether caused by the legal inability of said GRANTEE, its successors or assigns, to perform said conditions, or otherwise, during said 25 year period, all right, title and interest in and to the said premises shall,

-3-

at its option, revert to and become the property of the GRANTOR, who shall have the immediate right of entry upon said premises and the GRANTEE, its successors or assigns shall forfeight all right, title and interest in said premises and in any and all of the tenements, hereditaments and appurtenances thereunto belonging;

PROVIDED HOWEVER, that the failure of the War Assets Administration or its successor in function to insist in any one or more instances upon complete performance of any of the foregoing conditions subsequent shall not be construed as a waiver or relinquishment of the future performance on such condition, but the GRANTEE'S obligations with respect to such future performance shall continue in full force and effect: PROVIDED FURTHER than in the event GRANTOR fails to exercise its option to reenter the premises for any such breach within 26 years from the date hereof, all of the foregoing conditions subsequent, together with all rights of the GRANTOR to reenter thereon as hereinabove provided shall as of that date terminate and be extinguished.

IN THE EVENT THE GRANTEE, during the 25 year period first above referred to, replaces the temporary structures and improvements on the demised premises at the date hereof with permanent structures and improvements to be used for the same purposes as set out in condition numbered FIRST above, it may make application to the War Assets Administration or its successor in function for, and the latter may, in its discretion, abrogate the conditions subsequent together with all rights of reentry hereinabove contained.

In the event the demised premises outlives its usefulness for the purposes set out in condition numbered FIRST above, during the said 25 year period, the GRANTEE may secure abrogation of the conditions subsequent together with all rights of reentry hereinabove contained, by:

a) Payment of the unamortized portion of the 100% public benefit allowance granted the GRANTEE from the current market value of $471,790.00; which amortization shall be at the rate of 4% for each completed 12 months of operation in compliance with the terms of transfer, and

b) Approval of the War Assets Administration, or its successor in function.

THE GRANTEE, by the acceptance of this deed, covenants and agrees, for it-

-4-

self, its successors and assigns that the United States of America shall have the right during the existence of any national emergency declared by the President of the United States of America or the Congress thereof, to the full unrestricted possession, control and use of the premises or any part thereof, including any additions or improvements thereto made subsequent to this conveyance, without charge EXCEPT THAT the United States of America shall be responsible during the period of such use, if occurring prior to August 1, 1972, for the entire cost of maintaining the premises or any portion thereof so used and shall pay a fair rental for the use of any installations or structures which have been added thereto without federal aid; PROVIDED HOWEVER, that if such use is required after August 1, 1972, or the GRANTEE, its successors or assigns has secured the abrogation of the conditions subsequent together with all rights of reentry as hereinabove provided, the United States of America shall pay a fair rental for the entire portion of the premises so used.

    IN WITNESS WHEREOF, the GRANTOR has caused these presents to be executed in its name by the Federal Farm Mortgage Corporation, and the seal of the said Corporation to be hereunto affixed the day and year first above written.

(Corporate Seal)　　　　　　　　　　　　UNITED STATES OF AMERICA
In the Presence of:　　　　　　　　　　　By Federal Farm Mortgage Corporation

　　　　　　　　　　　　　　　　　　　　By _____
W. R. Fankhanel　　　　　　　　　　　　　　Leonard W. Nordman Vice President

Mary H. Tybering

STATE OF MINNESOTA )
　　　　　　　　　　　) ss.
COUNTY OF RAMSEY　 )

    I,　Harriet Auran　, a Notary Public in and for said State and County aforesaid, do certify that on this 9th day of October , 1947, before me appeared　Leonard W. Nordman　, to me personally known, and known to me to be Vice President of the Federal Farm Mortgage Corporation, who being by me duly sworn did say that he is such officer; that the seal affixed to the foregoing deed is the corporate seal of said Corporation and was affixed by order of the Board of Directors of said Corporation, and that he signed his name to the instrument by like order; that said deed was signed and sealed by him for said Corporation on behalf of the United States of America; and that said Vice President acknowledged the execution of said deed to be his free act and deed as such officer, the free act and deed of the United States of America by the Federal Farm Mortgage Corporation, and the free act and deed of the Federal Farm Mortgage Corporation acting for the United States of America.

    IN WITNESS WHEREOF, I hereunto set my hand and seal of Saint Paul, in the County and State aforesaid, on the date last above written.

(Notorial Seal)　　　　　　　　　　　　_____

C
O
P
Y

C
O
P
Y

## QUITCLAIM DEED

WHEREAS, the property hereinafter described was surplus to the needs of the United States of America pursuant to the provisions of the Surplus Property Act of 1944 (58 Stat. 765) as amended, and WAA Regulation No. 1 as amended (11 Fed. Reg. 408); and

WHEREAS, property hereinafter described was formerly used by the Department of the Army as an ordnance plant engaged in the manufacture and production of smokeless powder and other explosive chemical substances and compounds; and

WHEREAS, such property was subjected to contamination, by the introduction and manufacture thereon of such explosives; and

WHEREAS, the grantor hereinafter designated is unable to certify that the property has been decontaminated and is unable to state whether or not the same is safe for use; and

WHEREAS, the grantee hereinafter designated has evinced its desire to purchase such property with full knowledge of and notwithstanding the foregoing;

NOW, THEREFORE, This Indenture, made this 17th day of   March   , 1948, between the UNITED STATES OF AMERICA, acting by and through WAR ASSETS ADMINISTRATION, under and pursuant to Reorganization Plan One of 1947 (12 F. R. 4534), and pursuant to the powers and authority contained in the Surplus Property Act of 1944 (56 Stat. 765) as amended, and WAA Regulation 1 as amended, GRANTOR, and REGENTS OF THE UNIVERSITY OF MINNESOTA, a body corporate, created by the Territorial Government of Minnesota and perpetuated by the Constitution of the State of Minnesota, with post office address in Minneapolis, Minnesota, GRANTEE,

WITNESSETH, THAT the said Grantor, in consideration of the covenants, conditions, restrictions and reservations hereafter contained, and other good and valuable consideration, the receipt of which is hereby acknowledged, does hereby grant, bargain, quitclaim and convey unto the said Grantee, its successors and assigns, forever, the following described property in the County of Dakota, State of Minnesota, to-wit:

West one-half ($W\frac{1}{2}$) of Section One (1); All of Section Two (2); the North half ($N\frac{1}{2}$) and the southeast Quarter ($SE\frac{1}{4}$) of Section Three (3); all in Township One hundred fourteen (114) North, Range Nineteen (19) West of the 5th Principal Meridian.

West one-half (W$\frac{1}{2}$) of Section Thirty-Six (36); All of Section Thirty-five (35); the East one-half (E$\frac{1}{2}$) and the South one-half of the Southwest Quarter (S$\frac{1}{2}$ SW$\frac{1}{4}$) and the South one-half of the North one-half of the Southwest Quarter (S$\frac{1}{2}$ N$\frac{1}{2}$ SW$\frac{1}{4}$) of Section Thirty-four (34); the South one-half (S$\frac{1}{2}$) of Section Twenty-six (26); and the South East Quarter (SE$\frac{1}{4}$) of Section Twenty-seven (27); all in Township One Hundred Fifteen (115) North, Range Nineteen (19) West of the 5th Principal Meridian.

Title to said land, consisting of 3,320 acres more or less, having been acquired by the United States of America as a part of that installation known as the Gopher Ordnance Works, Rosemount, Dakota County, Minnesota.

Together with the improvements and betterments on said lands, including but not limited to, buildings and structures and customary building installations and railway trackage.

There is specifically reserved and excluded from the above conveyance unto the grantor, its designates, grantees and assigns, an easement for the use-in-place and/or dismantling and removal of those buildings, structures and functional units designated as buildings numbered 207-A, 207-B, Ether Manufacturing and Alcohol Rectifying Units; 207AA and 207BB, Ether Manufacturing and Alcohol Tank Farm; 303, ANA Nitric Acid Concentration Unit; 303, ASA Sulphuric Acid Concentration Unit; 303, SAC Sulphuric Acid Concentration Unit; 612A, Acid Utilization Plant; 226A, Hydraulic Refrigeration Unit; 227A, Warehouse, 227B, Warehouse and 227C, Warehouse, together with the right to the use and utilization of the land areas surrounding the said functional units necessary for the operation and/or dismantling and removal thereof, and for a right-of-way over the premises conveyed for ingress and egress to the said functional units, and together with the right to reactivate and operate said functional units and/or dismantle, sell and remove the same from the premises conveyed, and to utilize jointly with the grantee all utilities remaining on the premises conveyed in connection with the aforesaid activities. Said easement rights shall be free of any and all cost or charge, other than for standard utility charges entailed, and shall continue for so long as the said functional units may remain in place.

The aforesaid premises are hereby conveyed subject, however, to the following easements and encumbrances:

1. All unexpired agricultural and residence leases now in effect.

2. Easements for pipe line to the Minnesota Northern Natural Gas Company or its successors.

- 2 -

3. Easements to the Northern States Power Company for electric trans-
mission and distribution lines.

4. Easements for public roads and highways and public utilities.

5. Any other easements in open and notorious use by the owner thereof,
not specifically mentioned herein.

Said land was duly declared surplus and assigned to War Assets Adminis-
tration, acting pursuant to Reorganization Plan One of 1947, for disposal pursuant
to the provisions of the above-mentioned Act and WAA Regulation 1 as amended.

TO HAVE AND TO HOLD all and singular said premises together with the
appurtenances, unto the said Grantee and its successors and assigns forever, pro-
vided, however, that this conveyance is made and accepted upon each of the following
conditions subsequent which shall be binding upon and enforceable against said
Grantee, its successors or assigns and each of them, as follows:

FIRST: That for a period of 25 years from the date of this conveyance,
said premises shall be continuously used in accordance with the program set forth
in detail by the Grantee in its application dated July 15, 1946, and all amend-
ments thereto, as recommended by the United States Office of Education and
accepted by the Grantor.

SECOND: That for a period of 25 years from the date of this conveyance,
the Grantee, its successors or assigns shall file a semi-annual report with the
War Assets Administration or its successor in function, setting forth its curricula
and other pertinent data establishing its continuous use for the purposes first
above set forth.

THIRD: That it will not resell or lease said premises within 25
years from the date of this instrument without first obtaining the written
authorization of the War Assets Administration to such resale or lease.

That in the event there is a breach of the above conditions by the
Grantee, its successors or assigns, whether caused by the legal inability of
said Grantee, its successors or assigns, to perform said conditions, or other-
wise, during said 25 year period, all right, title and interest in and to the
said premises shall, at its option, revert to and become the property of the
Grantor, who shall have the immediate right of entry upon said premises and the
Grantee, its successors or assigns shall forfeit all right, title and interest
in said premises and in any and all of the tenements, hereditaments and appurten-
ances thereunto belonging;

PROVIDED, HOWEVER, that the failure of the War Assets Administration
or its successor in function to insist in any one or more instances upon complete

- 3 -

performance of any of the foregoing conditions subsequent shall not be construed as a waiver or relinquishment of the future performance on such condition, but the Grantee's obligations with respect to such future performance shall continue in full force and effect:  Provided, further, that in the event Grantor fails to exercise its option to re-enter the premises for any such breach within 26 years from the date hereof, all of the foregoing conditions subsequent, together with all rights of the Grantor to re-enter thereon as hereinabove provided shall as of that date terminate and be extinguished.

    IN THE EVENT THE GRANTEE, during the 25 year period first above referred to, replaces the temporary structures and improvements on the demised premises at the date hereof with permanent structures and improvements to be used for the same purposes as set out in Condition numbered FIRST above, it may make application to the War Assets Administration or its successor in function for, and the latter may, in its discretion, abrogate the conditions subsequent together with all rights of re-entry hereinabove contained.

    In the event the demised premises outlives its usefulness for the purposes set out in condition numbered FIRST above, during the said 25 year period, the Grantee may secure abrogation of the conditions subsequent together with all rights of re-entry hereinabove contained, by:

    a) Payment of the unamortized portion of the 100% public benefit allowance granted the Grantee from the current market value of $3,936,213.00; which amortization shall be at the rate of 4% for each completed 12 months of operation in compliance with the terms of transfer, and

    b) Approval of the War Assets Administration, or its successor in function.

    The Grantee, by the acceptance of this deed, covenants and agrees, for itself, its successors and assigns that the United States of America shall have the right during the existence of any National Emergency declared by the President of the United States of America or the Congress thereof, to the full unrestricted possession, control and use of the premises or any part thereof, including any additions or improvements thereto made subsequent to this conveyance, without charge EXCEPT THAT, the United States of America shall be responsible during the period of such use, if occurring prior to _____ March 17, 1973 _____, for the entire cost of maintaining the premises or any portion thereof so used and shall pay a fair rental for the use of any installations or structures which have been added thereto without Federal aid; PROVIDED, HOWEVER, that if

- 4 -

such use is required after _____ March 17, 1973 _____ or the Grantee, its successors or assigns has secured the abrogation of the conditions subsequent together with all rights of re-entry as hereinabove provided, the United States of America shall pay a fair rental for the entire portion of the premises so used.

FURTHER, by the acceptance of this instrument, the Grantee admits and confesses to full knowledge with respect to the facts contained in the foregoing recitals as to the possible contaminated condition of the property.

By the acceptance of this instrument and as a further consideration for this conveyance, the Grantee herein covenants and agrees for itself and its successors and assigns to assume all risk for all personal injuries and property damages arising out of ownership, maintenance, use and occupation of the foregoing property; and further covenants and agrees to indemnify and save harmless the War Assets Administration and the United States of America, their servants, agents, officers, and employees against any and all liability claims, causes of action or suits due to, arising out of, or resulting from, immediately or remotely, the possible contaminated condition, ownership, use, occupation or presence of the Grantee, or any other person upon the property lawfully or otherwise.

IN WITNESS WHEREOF, the Grantor has caused these presents to be executed on the day and year first above written.

UNITED STATES OF AMERICA
Acting by and through
WAR ASSETS ADMINISTRATION

By /s/ Joseph A. Burke
    Joseph A. Burke
    Deputy Regional Director
    for Real Property Disposal
    War Assets Administration
    Chicago, Illinois

IN THE PRESENCE OF:

_____

_____

REGENTS OF THE UNIVERSITY OF MINNESOTA

By /s/ J. L. Morrill
                    President

IN THE PRESENCE OF:

_____

_____

ATTEST:

/s/ W. T. Middlebrook
                Secretary

- 5 -

STATE OF ILLINOIS )
               )  SS
COUNTY OF COOK    )

     I, _____, a Notary Public in and for said State and County aforesaid, do certify that on this  17  day of  March , 1948, before me appeared Joseph A. Burke, Deputy Regional Director, War Assets Administration, Chicago, Illinois, to me personally known, and known to me to be such Deputy Regional Director of the War Assets Administration, who being by me duly sworn did say that he was such Deputy Regional Director, and that he signed his name to said deed in pursuance of proper authority, that said deed was signed by him, as such Deputy Regional Director, War Assets Administration, on behalf of the United States of America; and that said Joseph A. Burke acknowledged the execution of said deed to be his free act and deed as such Deputy Regional Director, the free act and deed of the United States of America by the War Assets Administration, and the free act and deed of the War Assets Administration, acting for the United States of America, and that said Administration has no official seal.

     IN WITNESS WHEREOF, I hereunto set my hand at Chicago, Illinois, in the County and State aforesaid, on the date last above written.

_____
Notary Public

(NOTARIAL SEAL)         My Commission Expires:  2-26-50

STATE OF MINNESOTA )
                )  SS
COUNTY OF HENNEPIN )

     I, _____ T. L. O'Hearn _____, a Notary Public in and for the State and County aforesaid, do certify that on this  18  day of  March , 1948, before me appeared J. L. Morrill and W. T. Middlebrook, President and Secretary of the Board of Regents of the University of Minnesota, respectively, to me personally known, and known to me to be such President and Secretary of the Board of Regents of the University of Minnesota, who being by me duly sworn did say that they were such President and Secretary of the Board of Regents of the University of Minnesota, and that they signed and attested said deed in pursuance of proper authority, that said deed was signed and attested by them, as such President and Secretary of the Board of Regents of the University of Minnesota, respectively, on behalf of the Board of Regents of the University of Minnesota; and that said J. L. Morrill and W. T. Middlebrook acknowledged the execution and attestation of said deed to be their free act and deed as such President and Secretary of the Board of Regents of the University of Minnesota and the free act and deed of the said Board of Regents of the University of Minnesota and the seal affixed thereto to be the corporate seal of said University of Minnesota.

     IN WITNESS WHEREOF, I hereunto set my hand at Minneapolis, Minnesota, in the County and State aforesaid, on the date last above written.

/s/  T. L. O'Hearn
Notary Public, Hennepin County, Minn.
My Commission Expires:
T. L. O'HEARN
Notary Public, Hennepin County, Minn.
My Commission Expires Feb. 10. 1954.

(NOTARIAL SEAL)

- 6 -

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REGENTS OF THE UNIVERSITY
OF MINNESOTA,

     Plaintiff,

     v.                           Case No. 17-cv-03690 (DSD-ECW)

UNITED STATES OF AMERICA; AND
E.I. DU PONT DE NEMOURS AND CO.,

     Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

# APPENDIX B

## CONSENT DECREE



Original Deeds - USA to U of M

Quit Claim Deed, dated Oct 9, 1947,
recorded Oct 17, 1947 as doc 193572 in bk
224 of deeds, pg 499

Quit Claim Deed, dated Mar 17, 1948,
recorded Mar 19, 1948 as doc 195731 in bk
224 of deeds, pg 598